**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CLIENT FUNDING SOLUTIONS CORP., | ) | |
|     Plaintiff, | ) | |
| | ) | |
|      v. | ) | Case No. 10-cv-482 |
| | ) | |
| DEBBIE CRIM a/k/a/ DEBBIE CRIM CLARK, | ) | Judge Robert M. Dow, Jr. |
|     Defendant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| DEBBIE CRIM a/k/a DEBBIE CRIM CLARK, | ) | |
|     Third-Party Plaintiff, | ) | |
| | ) | |
|      v. | ) | |
| | ) | |
| THE VRDOLYAK LAW GROUP, LLC, | ) | |
|     Third-Party Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a motion to dismiss [151] filed by Third-Party Defendant The Vrdolyak Law Group, LLC ("VLG"). VLG seeks to dismiss Third-Party Plaintiff Debbie Crim's intentional infliction of emotional distress claim (Count IX) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Third-Party Defendant's motion to dismiss [151] is denied.

**I.     Background**[1]

In 2001, Debbie Crim ("Crim") retained the Vrdolyak Law Group, LLC ("VLG") in connection with serious injuries she allegedly suffered in a 2001 Metra train collision with an

---

[1] For purposes of VLG's motion, the Court assumes as true all well-pleaded allegations set forth in the third-party complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada*, *N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

automobile.[2]  The lead attorney on the case was Peter Vrdolyak ("Vrdolyak").  The personal injury litigation continued from 2001 through a partial settlement of $2.4 million with the auto driver, negotiated by VLG in 2009.

Due to Crim's inability to work, she experienced financial difficulties during the protracted litigation.  In early 2005, Crim told VLG that she was in need of a loan.  VLG gave Crim the name of Client Funding Solutions Corp. ("CFS"), a licensed Illinois lender engaged in the business of making litigation-based loans to plaintiffs at what are conceded to be exorbitant, but legal, rates of interest of 45 to 60% annually.  Thereafter, Crim negotiated loans and executed loan documents with CFS.  Interest was rolled into the renewed or new loans that she requested from CFS.  CFS obtained information from VLG regarding the prospects of the litigation before committing to make the loans, and CFS sent VLG statements with respect to the balance then due from Crim.  By late 2009, when the $2.4 million partial settlement was in place, CFS claimed that Crim's loan, with interest, totaled approximately $413,000.  Crim asked that VLG assist her in looking into the accuracy of the amount claimed.  VLG rendered some limited assistance in that regard in December 2009.

During the same period of time, CFS was demanding that its loans to Crim be repaid from the settlement proceeds then on hand.  On or about December 22, 2009, CFS filed a breach of contract and attachment action in the Circuit Court of Cook County, seeking an attachment of approximately $413,000 (plus an additional $340.78 per diem and costs) of the $2.4 million settlement.  It named only Crim as a defendant.  An order of attachment was entered on December 28, 2009, and thereafter served on VLG.  The attachment order stated in relevant part: "IT IS SO ORDERED that the Sheriff of Cook County attach *so much of the estate, real or personal of the defendant as may be found in your county, as shall be of value sufficient to satisfy*

---

[2]  Crim originally retained Edward Vrdolyak Ltd.  VLG is the successor to that firm.

*the debt and costs, according to the affidavit*, but in case any specific property of the defendant found in your county shall be described herein, then you shall attach the described property only, and no other property, the said specified property to be so attached, being described as follows: settlement proceeds of Cook County Case Number 2001M6-6170, case entitled Clark Debbie Crim vs. Deboer Jennifer S., et al." [See 159, Ex. A (emphasis added).]

The case was removed from the Circuit Court of Cook County to this Court on January 25, 2010. VLG was terminated as Crim's counsel and Crim filed a counterclaim against CFS and a third-party complaint joining VLG [see 6]. Shortly thereafter, Crim filed a motion for a temporary restraining order [7, 8], which was noticed for presentment on January 27, 2010.

At the hearing on the TRO motion, counsel for Crim and CFS appeared; no one appeared for VLG. Crim sought immediate injunctive relief on the ground that she had rent and medicine bills to pay and an immediate right to at least a substantial portion of the settlement proceeds. At the hearing, the Court was led to believe that VLG (and perhaps CFS) had taken the position that all of the remaining proceeds (which at that time remained in an account at VLG) were subject to the December 28 attachment order. The Court explained its view that the attachment pertained only to "so much of the estate as shall be of value sufficient to satisfy the debt and costs as claimed in the affidavit" (1/27/10 Tr. at 5) – that is, $413,000 plus the per diem and costs – and thus even if funds were set aside in the court registry sufficient to cover the attached amounts (and then some), Crim still could receive a large distribution right away. The Court requested that the parties discuss whether an agreed order might be entered to that effect and asked the parties to include VLG in their discussions.

On January 29, 2010, the TRO motion was called for further hearing. At that time, counsel for VLG appeared. The parties had negotiated, and the Court entered, an agreed order

[18] pursuant to which VLG deposited $550,000 with the Clerk of the Court and transferred the balance of the settlement funds (about $816,000) to Crim – VLG previously having taken out its fees and costs for the personal injury litigation.  By March 1, 2010, the litigation between Crim and CFS had settled [see 39, 41] with the assistance of Magistrate Judge Cox.  The case between Crim and VLG continues.

## II.    Legal Standard on Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case.  See *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990).  To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  The factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true.  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 569 n.14).  In other words, the pleading must allege facts that plausibly suggest the claim asserted.  *Twombly*, 550 U.S. at 570.  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original).  As noted above, the

Court accepts as true all well-pleaded facts alleged by Third-Party Plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III. Analysis

VLG argues that Crim's claim for intentional infliction of emotional distress (one of several in her third amended third-party complaint) is inadequate and should be dismissed. To establish an IIED claim under Illinois law, a plaintiff must prove that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to cause or was aware of a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct did in fact cause such distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2007) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)). VLG challenges the sufficiency of Crim's allegations as to the first and third elements of an IIED claim – that VLG's conduct was extreme and outrageous and did in fact cause Crim severe emotional distress.

Claims for IIED are governed by Rule 8 of the Federal Rules of Civil Procedure. *Christensen v. County of Boone, IL*, 483 F.3d 454, 466 (7th Cir. 2007). Under Rule 8, a complaint "should be 'short and plain' and suffices if it notifies the defendant of the principal events." *Id.* (quoting *Hoskins v. Poelstra,* 320 F.3d 761, 764 (7th Cir. 2003)). Furthermore, a complaint need not contain "all of the facts that would be necessary to prevail" and need not "plead facts matching elements of legal theories." *Id.* (concluding that plaintiff had adequately pled claim for IIED despite fact that complaint did not include facts elaborating on the plaintiff's alleged "a severe emotional injury").

Given the nature of the relationship between VLG and Crim, the allegations regarding VLG's conduct are troubling. Crim alleges that Vrdolyak failed to properly inform Crim when CFS filed suit, and, despite instructions to transfer funds to Crim, Vrdolyak intentionally

withheld Crim's settlement proceeds until CFS could obtain an order attaching a portion of the settlement funds. Crim also alleges that Vrdolyak repeatedly assured Crim that he would release the majority of the funds because there was no need for all of the funds to be retained to pay CFS (which was owed an amount that was far less than Crim's remaining funds) and that he either would obtain clarification of the attachment order from the attorneys for CFS or directly from the Court. The complaint further alleges that instead of obtaining clarification, Vrdolyak engaged a family accountant, falsely told Crim that she owed more to CFS than even CFS claimed, and told Crim that if she wanted access to her funds, she had to no recourse but to pay CFS. Essentially, Crim alleges that Vrdolyak, the attorney whom Crim had trusted to handle a multi-million dollar personal injury action, pressured Crim to pay CFS, claiming that if CFS were not paid what it requested, then CFS would be able to continue to tie up all of Crim's funds—funds that she needed to pay basic (including medical) expenses – for a longer period of time.

Crim alleges that for nearly a month between December 28, 2009 and January 27, 2010, all of the settlement funds were tied up and Crim did not know how or when she would be able to pay bills and obtain medications. According to Crim, she suffered severe emotional distress because her trusted advisor and counselor turned on her in a crisis, causing uncertainty and an inability to pay for medications and other bills. Crim also alleges that she suffered physical distress as a result of Vrdolyak's actions, including inability to sleep, lost appetite, weight loss, headaches, and anxiety.

Given that Vrdolyak had served as Crim's representative over the course of eight years, Vrdolyak's alleged conduct in intentionally withholding Crim's settlement proceeds despite being aware of Crim's medical needs and in pressuring her to pay off CFS as the only means to

access her funds gives rise to a claim for intentional infliction of emotional distress.[3]  Under the circumstances here, "the plaintiffs' factual allegations described the principal events giving rise to the suit and attached them to a right of action cognizable under state law."  *Christensen*, 483 F.3d at 466.  Crim has adequately pled a claim for IIED.  *Id.*; see also *Peck v. West Aurora School Dist. 129*, 2006 WL 2579678, at *8 (N.D. Ill. Aug. 30, 2006) (plaintiffs "sufficiently state a claim for IIED by alleging that * * * 'defendants' conduct actually caused severe emotional distress to the plaintiffs' and that '[t]he plaintiffs suffered severe emotion distress as a direct and proximate result of defendants' illegal conduct and omissions.'").  Crim alleges that she suffered emotional injury, and the allegations in the complaint regarding VLG's conduct are sufficient to imbue this allegation with the requisite level of plausibility.  *Twombly*, 550 U.S. at 570.  Furthermore, allegations similar to those in the instant complaint have been held to state a claim for IIED.  See, *e.g. McGrath v. Fahey*, 533 N.E.2d 806, 810 (Ill. 1988) (Illinois law considers "improperly using a position of power or authority" to be a "significant consideration" in evaluating IIED claims) (finding that bank's use of funds as a weapon against depositor "could easily be deemed outrageous by a jury"); *Chen v. Mayflower Transit, Inc.*, 2002 WL 1632412, at *7 (N.D. Ill. July 22, 2002) (finding moving company abused power to extort additional funds).

---

[3]  In her response brief, Crim repeatedly stresses that VLG was in possession of all of Crim's settlement money, and that VLG knew that Crim needed that money for medical expenses.  [See 158, at 5, 6, 8.]  VLG notes in its opening brief that "it is undisputed that on December 15, 2009, Peter Vrdolyak personally deposited $15,000 into Crim's account."  [See 151, at 11 nn. 4-5.]  The Court may not consider facts outside the pleadings at the motion to dismiss stage, such as the assertion of a $15,000 deposit approximately six weeks before this lawsuit was filed.  However, if discovery confirms that a sizable amount of the settlement money was released to Crim sufficient to take care of her daily needs – such as rent, food, medicine, and medical bills – her claim of emotional distress may be weaker at the summary judgment stage.

**IV.    Conclusion**

For the foregoing reasons, Third-Party Defendant's motion to dismiss [151] is denied.[4]

Dated: August 16, 2011

_____
Robert M. Dow, Jr.
United States District Judge

---

[4] At the most recent hearing in this case, the parties represented that additional fact and expert discovery is necessary, at least some of which relates to Count IX. In view of Magistrate Judge Cox's prior involvement in supervising discovery in this case, the referral has been reopened. When all discovery has closed, the parties should request a status hearing in the district court to set a schedule for dispositive motions.