IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLIENT FUNDING SOLUTIONS CORP., ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DEBBIE CRIM a/k/a/ DEBBIE CRIM CLARK, ) <br> Defendant. ) <br> ) <br> ─────────────────────────────── ) <br> ) <br> DEBBIE CRIM a/k/a DEBBIE CRIM CLARK, ) <br> Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE VRDOLYAK LAW GROUP, LLC, ) <br> Third-Party Defendant. ) | Case No. 10-cv-482 <br><br> Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

In this diversity case, Third-Party Plaintiff Debbie Crim filed a second amended third-party complaint against Third-Party Defendant The Vrdolyak Law Group ("VLG"), alleging conversion, accounting, breach of fiduciary duty, conspiracy, and intentional infliction of emotional distress. Before the Court is VLG's motion for summary judgment [197] as to all counts against it. For the reasons stated below, the motion [197] is granted in part and denied in part.

**I.    Background**[1]

In 2001, Crim, a Florida resident, suffered significant injuries resulting from an accident while aboard a Metra train. [208 at ¶¶ 1, 6, 215 at ¶ 10.] Crim hired VLG, an Illinois limited

---

[1] The Court takes the relevant facts primarily from the parties' Local Rule 56.1 statements. [See 198, 208, 215, 223.] However, to the extent that the statements do not comply with Local Rule 56.1, the Court has disregarded them. See *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000); see also *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (reaffirming the court's broad discretion to require strict compliance with local rules).

liability corporation, to file suit against the allegedly culpable parties. [208 at ¶¶ 2, 7.] By early 2005, Crim had been unemployed for three years and needed money. [208 at ¶ 9.] Crim approached Peter Vrdolyak, who referred her to Client Funding Solutions ("CFS"). [208 at ¶¶ 10, 14, 215 at ¶ 14.] Between March 2005 and December 2009, Crim borrowed a total of $102,000 from CFS and another $6,500 from W&M Trading Corp. [208 at ¶ 17.] With each transaction, Crim signed and returned promissory notes, which bear an interest rate of 60% or 45%. [208 at ¶ 19.] The parties dispute the extent of Vrdolyak's involvement in Crim's loan transactions. [208 at ¶¶ 18, 66, 215 at ¶ 16.]

CFS is a litigation lending company, providing loans to individuals in, among other things, personal injury matters. [208 at ¶ 16.] Vrdolyak had known of CFS for under a year when he referred Crim. [208 at ¶ 15.] He thought CFS would be the best company to help Crim because his brother, Eddie, knew the principals of CFS—including Miles Lustig and Wayne Cohen—and told Vrdolyak that they were "pretty good guys." [208 at ¶ 15, 215 at ¶¶ 1-2.] No member of the Vrdolyak family has ever loaned any funds to CFS, and CFS has never invested any money in any business owned by any member of the Vrdolyak family. [208 at ¶ 64.] But Vrdolyak did refer other VLG clients to CFS, primarily after he referred Crim. [215 at ¶¶ 8, 15.]

In October 2009, Crim settled one of the Metra-related claims for $2.4 million. [208 at ¶ 20.] VLG advanced Crim a total of $16,000 before receiving the settlement proceeds from Safeco Insurance Company on December 9. [208 at ¶¶ 21-22.] On December 14, Vrdolyak sent a settlement statement to Crim, which noted that her debt to CFS was reduced by $25,000, making the outstanding total around $386,000. [208 at ¶ 24, 215 at ¶ 21.] On December 15, Vrdolyak drafted checks to all lienholders and was prepared to issue Crim a check for the balance of the settlement funds. [208 at ¶¶ 26-27.] Crim, however, asked Vrdolyak to wait, as

she wanted to talk to a financial advisor first. [208 at ¶ 27.] But Crim did ask Vrdolyak to deposit $15,000 into her account at Great Lakes Bank, which he did. [208 at ¶ 28.] Crim subsequently told Vrdolyak to pay the other liens but to withhold payment to CFS because she wanted to conduct an audit of the loan documents. [208 at ¶ 30.] Vrdolyak relayed this information to Lustig. [208 at ¶ 31.] Lustig, in turn, prepared for legal action against Crim because CFS was not being paid. [208 at ¶ 53.]

On December 23, CFS filed a complaint for breach of contract and attachment in the Circuit Court of Cook County, alleging that Crim intended to "fraudulently conceal, assign or otherwise dispose of" the settlement funds to her creditors' detriment. [1-2 at 6, 208 at ¶ 33.] A notice of this lawsuit was sent via facsimile to VLG that day. [215 at ¶ 24.] The next day, Vrdolyak sent Crim an e-mail asking what he should do with the settlement proceeds. [208 at ¶ 32.] On December 27, Crim sent Vrdolyak an e-mail, instructing him to place the amount claimed by CFS in escrow pending completion of the audit and to distribute the remaining proceeds to her. [208 at ¶ 34.] Vrdolyak testified that he did not see Crim's e-mail until the next day, when he was out of town (but had access to e-mail and telephone). [208 at ¶ 35, 215 at ¶ 22.] The parties dispute whether other VLG attorneys could have authorized a wire transfer that day. [208 at ¶ 36, 215 at ¶ 25.] Vrdolyak also testified that he was unaware of the CFS complaint until December 29 or 30. [223 at ¶ 38.]

On December 29, CFS obtained an order for attachment and summons from the Circuit Court. [208 at ¶ 40.] The order indicates that the amount claimed is $413,838.99 plus $340.78 per diem and costs. [208 at ¶ 41.] The order also states:

> IT IS ORDERED that the Sheriff of Cook County attach *so much of the estate, real or personal of the defendant as may be found in your county, as shall be of value sufficient to satisfy the debt and costs, according to the affidavit*, but in case any specific property of the defendant found in your county shall be described

herein, then you shall attach the described property only, and no other property, the said specified property to be so attached, being described as follows: settlement proceeds of Cook County Case Number 2001M6-6170, case entitled Clark Debbie Crim vs. Deboer Jennifer S., et al.

[198-6 (emphasis added).]

Vrdolyak read the order as prohibiting *any* distributions of the settlement funds. [208 at ¶ 42.] He did not file a motion to vacate or amend the order. [215 at ¶ 31.] Rather, Vrdolyak confirmed his understanding of the order with the attorney for CFS. [208 at ¶ 43.] He later had several other conversations with CFS's attorneys about getting funds to Crim and resolving the dispute. [208 at ¶ 44.] Vrdolyak also asked an accountant friend, Kevin Pierce, to review Crim's loan documents. [208 at ¶ 47.] Pierce's calculations—which took about five minutes to complete—were within $600 of CFS's amount claimed. [208 at ¶ 47, 215 at ¶ 29.] Vrdolyak ultimately "suggested" that Crim settle the CFS matter "ASAP." [215 at ¶ 30.] Crim testified that she felt "pressured" by Vrdolyak to pay CFS. [215 at ¶ 30.]

In January 2010, Crim terminated VLG. [208 at ¶ 54.] She then removed the CFS lawsuit against her to this Court and added a counterclaim against CFS and a third-party complaint against VLG and W&M. [170 at 3, 208 at ¶ 55.] Shortly thereafter, Crim sought a temporary restraining order to secure the settlement proceeds. [170 at 3.] At a hearing on the matter, the Court explained its view that the Circuit Court attachment pertained only to the $413,838.99 (plus the per diem and costs) claimed by CFS; thus, Crim was still entitled to a sizeable distribution. [170 at 3.] Crim agreed to withdraw her motion, and VLG agreed to 1) deposit $550,000 with the Clerk of the Court as security for any potential recovery by CFS; and 2) immediately transfer the balance of the settlement funds (about $816,000) to Crim. [170 at 3-4, 208 at ¶ 56.]

4

In February 2010, Crim settled with CFS for $225,000; thus, only Crim's third-party complaint remained. [170 at 4, 208 at ¶ 59.] VLG then sought to dismiss Crim's intentional infliction of emotional distress claim. The Court denied the motion, finding that Vrdolyak's alleged conduct in intentionally withholding the settlement proceeds despite Crim's medical needs and in pressuring her to repay CFS sufficiently stated a claim for extreme and outrageous conduct. [170 at 5-7.] The Court cautioned, however, that Crim's claim might be vulnerable at summary judgment if discovery confirmed that Crim received sufficient proceeds to take care of her daily needs. [170 at 7.] VLG subsequently filed a motion for summary judgment. [197.]

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In turn, summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Id.* at 322. And the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S at 252.

## III. Analysis

Crim's second amended third-party complaint asserts five counts against VLG: Count IV (conversion), Count V (accounting), Count VII (breach of fiduciary duty), Count VIII (conspiracy), and Count IX (intentional infliction of emotional distress). VLG argues that summary judgment is appropriate on all counts. The Court will address each count in turn.[2]

### A. Count IV (Conversion)

In Count IV, Crim alleges that she was required to hire counsel because VLG refused to turn over settlement proceeds that were rightfully hers. Under Illinois law, to prove conversion, a plaintiff must show: 1) a right to the property; 2) that the right includes the absolute, unconditional right to immediate possession of the property; 3) that plaintiff has demanded possession of the property; and 4) that defendant took control or claimed ownership of the property wrongfully and without authorization. *Edwards v. City of Chicago*, 905 N.E.2d 897, 900 (Ill. App. Ct. 2009). VLG contends that Crim cannot prove the first, second, and fourth

---

[2] VLG initially argues that summary judgment is warranted on the conversion, breach of fiduciary duty, and conspiracy counts because Crim settled with CFS for less than what she owed. [201 at 16-17.] Crim counters, however, that she never would have done business with CFS but for VLG steering her in that direction; thus, the entire CFS settlement amount is at issue. [209 at 10.] It is undisputed that Vrdolyak referred Crim to CFS. This fact, combined with Crim's testimony, constitutes sufficient evidence for the jury to reasonably find that Crim would never have borrowed from CFS but for VLG's actions. Moreover, Crim contends that she is entitled to forfeiture of funds VLG received from Crim, if the jury finds that VLG breached its fiduciary duty. [209 at 10-11.] VLG fails to respond to these arguments. Thus, summary judgment is not appropriate on damages grounds.

elements because the settlement funds were sequestered by the attachment order. The Court disagrees.

As previously explained, in the Court's view, the order only attached an amount "sufficient to satisfy the [CFS] debt and costs," which still left a large chunk available to Crim. [170 at 2-3.] It is undisputed that Vrdolyak did not read the order this way. These facts, when viewed in the light most favorable to Crim, constitute sufficient evidence for the jury to reasonably find that Vrdolyak deliberately withheld funds from Crim. See *AutoZone, Inc. v. Strick*, 543 F.3d 923, 934 (7th Cir. 2008) (finding that intent may be inferred and that whether the defendant was telling the truth is a jury issue). Moreover, Crim requested that Vrdolyak transfer funds to her on December 27, two days *before* the attachment order was executed. Vrdolyak testified that he didn't see the email until December 28, but even if this were true, Crim has submitted some evidence that other VLG attorneys could have authorized a wire transfer that day. Thus, summary judgment is not warranted on Count IV.

### B. Count V (Accounting)

In Count V, Crim alleges that VLG failed to fully account for its costs and expenses regarding its representation of Crim. Under Illinois law, equity will not direct an accounting where "there is no charge in the complaint that a demand for an accounting had been made before the filing of the action or that such a demand, if made, would be futile." *Am. Sanitary Rag Co. v. Dry*, 105 N.E.2d 133, 135 (Ill. App. Ct. 1952); see also *Tankersley v. Albright*, 514 F.2d 956, 970-71 & n.39 (7th Cir. 1975). VLG argues that Crim never demanded an accounting. Crim does not dispute this contention but argues instead that a demand would have been futile. But Crim's lone citation on this issue—to her response to a VLG interrogatory [see 208-4 at 91]—does not support her position. Thus, summary judgment is granted for VLG Count V.

7

### C. Count VII (Breach of Fiduciary Duty)

In Count VII, Crim alleges that VLG breached its fiduciary duty by, among other things, revealing confidential information to CFS, withholding funds and intentionally misreading the attachment order, and pressuring Crim to pay CFS. Under Illinois law, to prove breach of fiduciary duty, a plaintiff must show that: 1) a fiduciary duty exists; 2) the duty was breached; and 3) the breach proximately caused damages. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010) (citing *Neade v. Portes*, 739 N.E.2d 496, 502 (Ill. 2000)). VLG argues that Crim cannot prove the second and third elements because her factual allegations have no support in the record. The Court disagrees.

First, VLG argues that it never disclosed any confidential information to CFS. It is undisputed, however, that Vrdolyak told Lustig that Crim was withholding payment to CFS because she wanted to conduct an audit of the loan documents. In turn, CFS filed suit against Crim and sought attachment, alleging that Crim intended to evade her creditors. These facts, when viewed in the light most favorable to Crim, constitute sufficient evidence for the jury to reasonably find that Vrdolyak improperly disclosed confidential information to CFS. VLG emphasizes that CFS could have sought attachment based on Crim's out-of-state residence alone. But this is immaterial where CFS specifically sought attachment on the basis that Crim "resides out of state *and is about to fraudulently conceal, assign or otherwise dispose of her property*." [See 198-6 (emphasis added).]

Second, VLG argues that it did not delay in transferring funds or deliberately misread the attachment order. But as set forth above, the facts (when viewed in Crim's favor) allow for a reasonable inference that Vrdolyak deliberately withheld funds from Crim. Moreover, it is

undisputed that Vrdolyak never filed a motion to amend or vacate the attachment order. Rather, he relied solely on assurances from CFS's lawyer.

Third, VLG argues that it never pressured Crim to pay CFS. It is undisputed, however, that Vrdolyak "suggested" that Crim settle with CFS "ASAP" rather than pursue legal remedies. And intertwined with all of these issues are disputes regarding VLG's relationship with CFS and the extent to which Vrdolyak facilitated Crim's loan transactions. As a result, a jury could reasonably find that VLG was improperly prioritizing CFS's interests over Crim's. Thus, summary judgment is not appropriate on Count VII.

### D. Count VIII (Conspiracy)

In Count VIII, Crim alleges that CFS and Vrdolyak conspired to convert Crim's settlement proceeds. Under Illinois law, to prove civil conspiracy, a plaintiff must show: 1) a combination of two or more persons; 2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; and 3) the commission of an overt tortuous or unlawful act by one of the conspirators, in furtherance of the scheme. *Time Savers, Inc. v. LaSalle Bank, N.A.*, 863 N.E.2d 1156, 1167 (Ill. App. Ct. 2007).

In its opening brief, VLG argues in a conclusory fashion that Crim cannot establish the second and third elements. [201 at 22.] In turn, Crim argues that the evidence supports a finding that "[t]he act of filing the [underlying] complaint was the unlawful purpose in furtherance of the conspiracy to deprive Crim of her money and force her to pay [CFS]." [209 at 17.] VLG fails to respond to this argument. Accordingly, summary judgment is not warranted on Count VIII.[3]

---

[3] In the conspiracy section of its opening brief, VLG also mentions that: 1) Crim's out-of-state residence was sufficient for attachment; 2) Vrdolyak did not disclose any confidential information to CFS; and 3) Vrdolyak did not intend to participate in the alleged scheme. [201 at 21-22.] As set forth above, however, these "facts" are either disputed or immaterial.

### E. Count IX (Intentional Infliction of Emotional Distress)

In Count IX, Crim alleges that Vrdolyak knew that his conduct in, among other things, protecting CFS's interests over Crim's, intentionally withholding the settlement proceeds despite Crim's medical needs, and pressuring Crim to repay CFS would cause Crim emotional harm. Under Illinois law, to prove intentional infliction of emotional distress, a plaintiff must show that: 1) the defendant's conduct was extreme and outrageous; 2) the defendant either intended to cause or was aware of a high probability that his conduct would cause severe emotional distress; and 3) the defendant's conduct did in fact cause such distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2008) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003)).

In its opening brief, VLG argues that "*even accepting Crim's contentions as true, none of the alleged conduct* of VLG about which Crim complains can possibly be objectively characterized as [extreme and outrageous]." [201 at 23 (emphasis added), see also 214 at 11.] But as previously explained in connection with VLG's motion to dismiss, Crim has adequately stated extreme and outrageous conduct. [170 at 5-7.] Alternatively, VLG appears to argue that Crim's allegations regarding VLG's conduct are not supported by the record. As set forth above, however, this argument fails as well. Accordingly, summary judgment is not warranted on Count IX.[4]

---

[4] As noted above, in rejecting VLG's motion to dismiss, the Court observed that that Crim's claim might be vulnerable at summary judgment if discovery confirmed that Crim received sufficient proceeds to take care of her daily needs. [170 at 7.] VLG apparently did not view this argument as sufficiently strong to raise in its opening brief and thus has waived the argument. See *Nelson v. La Crosse Cnty. Dist. Attorney*, 301 F.3d 820, 836 (7th Cir. 2002) ("It is well settled that issues raised for the first time in a reply brief are deemed waived.").

**IV.     Conclusion**

For the foregoing reasons, VLG's motion for summary judgment [197] is granted in part and denied in part. Summary judgment for VLG is granted on Count V of the second amended third-party complaint. The remaining counts will be submitted to the jury.

Dated:  July 23, 2012                            _____
                                                 Robert M. Dow, Jr.
                                                 United States District Judge