# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 482 | **DATE** | 6/19/2013 |
| **CASE TITLE** | Client Funding Solutions Corp. vs. Crim | | |

**DOCKET ENTRY TEXT**

Following the most recent pre-trial hearing, the Court requested that the parties submit supplemental briefing on two issues that have long percolated in this case and that the Court discussed without reaching a final determination in its May 6, 2013 memorandum opinion and order [275]. After giving further consideration to the issues with the benefit of the parties additional briefing [277, 278, 281], the Court addresses the two remaining pre-trial issues in the order that follows.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

1. Presentation of evidence relating to jury and non-jury claims in the case

In its May 6 ruling, the Court determined that although some of Plaintiff's claims must be tried to a jury, one of her claims – for breach of fiduciary duty – is equitable in nature and must be resolved by the Court. [See 275, at 5-11.]

As the Court noted, this is not an uncommon situation, for "[a] jury trial does not have to include all or nothing" and courts have an array of options for accommodating dual decisionmakers in a single case. See, e.g., *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 737-39 (7th Cir. 2004). As a leading treatise has explained, "Because the Federal Rules of Civil Procedure allow legal, equitable, and maritime claims to be joined in a single action, and because the right to a jury trial under Rule 38 extends to individual issues in a case rather than to an entire action, combined trials in which the legal claims are submitted to a jury while the equitable or maritime claims are submitted to the court are almost inevitable." 8 MOORE'S FEDERAL PRACTICE § 39.14[1], at 39-27 (3d ed. 2008). In combined jury and non-jury trials, the Supreme Court has held that common questions must be tried first to a jury, for its factual findings will bind the Court. See *Beacon Theatres v. Westover*, 359 U.S. 500, 510 (1959); *Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 471 (7th Cir. 2004). However, apart from the "jury first" rule, "[w]hen certain of the issues are to be tried by jury and others by the court, the court may determine the sequence in which such issues shall be tried." Advisory Committee Note to Fed. R. Civ. P. 39 (citing *Liberty Oil Co. v. Condon Nat. Bank*, 260 U.S. 235 (1922)).

Several of the Federal Rules of Evidence bear on the scope of the Court's discretion and its exercise. To begin with, Rule 611 states that the Court "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining

**STATEMENT**

the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." And Rules 103, 104, and 105 together advance the purposes of "trial efficiency, the admission of relevant and reliable evidence, considered rulings, and rational decisions by the trier of fact, uncluttered by lengthy interruptions and admonitions to jurors to disregard that which they have heard or seen." Thomas A. Mauet & Warren D. Wolfson, TRIAL EVIDENCE 15 (5th ed. 2012).

Given (1) that the trial in this matter will involve dual decision makers and (2) the Court's discretion to manage the sequence of issues and presentation of evidence in these circumstances, the Court solicited the parties' input in regard to the order and presentation of evidence at trial.

Plaintiff takes the position that the parties should present all of their evidence in the case to both triers of fact. According to Plaintiff, "[t]his presentation of evidence will allow the flow of the trial to occur naturally and save the parties and the Court from having to accommodate a separate trial." Plaintiff proposes that the Court instruct the jurors that they will not be deciding the breach of fiduciary duty claim and tailor the jury instructions and verdict forms "to not include breach of fiduciary duty related information."

Defendant contends that the breach of fiduciary duty claim to be tried to the Court is sufficiently distinct from the other claims for the jury to decide that at least some of the evidence – primarily the expert testimony that goes only to that claim – should not be presented to the jury. In Defendant's view, the expert testimony of Mr. Collins (for the Defendant) and Ms. Robinson (for the Plaintiff) is irrelevant to the jury issues and its presentation to the jury would result in prejudice to Defendant and confusion for the jurors. Defendant's preferred approach would be to present all of the evidence on the claims that will be determined by the jury "first and completely." Then, once the jurors have been instructed and have begun their deliberations, the parties may present to the Court the expert opinion testimony on the fiduciary duty issues. In the alternative, Defendant proposes the same sequence, but with a trial recess after the testimony on the jury issues is complete, during which time the evidence on the breach of fiduciary duty claim would be presented to the Court alone, followed by the jury instructions and deliberations.

Having reviewed the record of this case as a whole, including the operative second amended third party complaint [140], the Court's prior opinions [225, 275], and the pre-trial order [280], and with particular attention paid to the proposed testimony of Mr. Collins and Ms. Robinson and the pre-trial rulings on the scope of their testimony [see 275, at 11-20], the Court concludes that the evidence at trial should be presented in two phases. Given that (1) both Collins and Robinson intend to present Rule 702 opinion testimony on matters relating to the breach of fiduciary duty claim and (2) neither of them has been identified or disclosed as a fact witness on any issue, the Court sees no reason for the jury to be present to hear their testimony. Not only would the testimony consume juror time listening to somewhat complicated and esoteric opinions on, for example, the standard of care for attorneys and matters of legal ethics, but it also would require the Court to fashion – and the jurors to comprehend and follow – instructions telling them to disregard some of what they heard in rendering their verdict. All of that would add considerably to the burden placed on jurors to resolve what otherwise should be relatively straightforward claims. Accordingly, Collins's and Robinson's testimony will be presented only to the Court in the second phase of the evidentiary presentations at trial.

In the first phase, all of the fact witnesses and the other experts, Dr. Merriman and Dr. Neri, will testify in the presence of the jury (and obviously the Court). The Court is cognizant that some of the fact testimony will be relevant to all of the issues in the case – both jury and non-jury – and it does not make any sense for the Court to parse out the testimony of fact witnesses on an issue-by-issue basis, nor has either party suggested that it do so. Once the first phase testimony is complete, the Court will allow counsel to present closing arguments on

**STATEMENT**

issues to be determined by the jurors, who will then begin their deliberations after receiving their instructions from the Court. As the jurors are deliberating, the parties will present the expert testimony on the breach of fiduciary issues, after which time counsel will be afforded closing arguments to the Court on those issues. Regardless of when the jury returns its verdict – that is, during or after the close of evidence and arguments on the non-jury claim – the Court will have the benefit of the jury's decision (thus honoring the "jury first" rule) well before issuing its own findings and conclusions as required under Federal Rule of Civil Procedure 52.

In sum, after considering the circumstances of this case in light of the Rules of Civil Procedure and Evidence cited above, the Court concludes that proceeding in two phases as set forth best accommodates the full range of interests of the parties, the jurors, and the Court at stake.

2.  Whether Plaintiff's conversion and conspiracy claims are duplicative

The remaining question is whether Count IV (conversion) and Count VIII (conspiracy) are duplicative. The Court raised this issue, but did not decide it, in its May 6, 2013 order [see 275, at 29-30]. With the benefit of the parties' additional briefing, the Court will now issue a ruling.

In Count IV, Crim claims that she sustained damages when VLG converted funds belonging to Crim by refusing to turn the funds over to her after she properly requested them. In Count VIII, Crim seeks damages for a conspiracy between VLG and an entity called Client Funding Solutions, which had loaned Crim money during the pendency of her personal injury suit.

Under Illinois law, civil conspiracy requires both (1) an agreement between the conspirators to accomplish either an unlawful purpose or a lawful purpose through unlawful means and (2) a tortious act committed in furtherance of the agreement. See, *e.g.*, *Reuter v. Mastercard International, Inc.*, 397 Ill. App. 3d 915, 927 (5th Dist. 2010). Thus, "[i]n order to extend liability" among the conspirators, "there must be liability to extend." *Id.* at 928. Given that the underlying tortious act is the linchpin of a civil conspiracy claim, courts applying Illinois law consistently have concluded that a civil conspiracy claim is duplicative where a plaintiff alleges a tort as the wrongful act underlying a conspiracy claim and the underying tort already has been adequately pled by the plaintiff in that it involves the same factual allegations and the same parties. See, *e.g.*, *Central States, Southeast & Southwest Areas Pension Fund v. Gopher News Co.*, 542 F. Supp. 2d 823, 830 (N.D. Ill. 2008) (dismissing conspiracy claim that "rests upon the same factual allegations as the fraud claim"); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 975 (N.D. Ill. 2000) (dismissing conspiracy claim that merely restated allegations involving misappropriation of trade secrets); *Real Colors, Inc. v. Patel*, 974 F. Supp. 645, 651 (N.D. Ill. 1997) (dismissing conspiracy claim because defendant did not allege "any new facts or bring in any new defendants through its charge of conspiracy"). As the Seventh Circuit has explained, the rationale for this result is straightforward: "[i]f there is a conspiracy and it fails, there is no injury and hence no tort liability; if it succeeds, the damages are fully recoverable in an action on the underlying tort." *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982) (holding that district court could properly dismiss conspiracy count since damages were already covered in underlying tort claim).

Applying these principles, the Court concludes that the conspiracy claim remaining in this case is duplicative of the conversion claim. The object of the alleged conspiracy between VLG and CFS was the same corpus of funds that Crim alleges VLG converted – namely, the proceeds of her personal injury settlement that had been entrusted to VLG. In other words, the underlying tort purportedly sustaining the conspiracy charge is

**STATEMENT**

conversion and the sole tortfeasor is VLG (the only Defendant named in Count IV). As Crim appears to acknowledge, if she prevails on either or both counts, she would be entitled only to a single recovery. In other words, her damages would be "fully recoverable in an action on the underlying tort." *Cenco*, 686 F.2d at 453.

Crim's focus on the potential for punitive damages does not change the equation, for Illinois law permits punitive damages for conversion and civil conspiracy provided that the trier of fact finds the Defendant's actions sufficiently reprehensible. See *Cirrincione v. Johnson*, 703 N.E.2d 67, 70-71 (Ill. 1998) (conversion); *Sarno v. Thermen*, 608 N.E.2d 11, 21 (Ill. App. Ct. 1st Dist. 1992) (civil conspiracy). And the Court cannot discern any way in which the evidence in support of the claim for conversion would differ materially from the evidence that Crim would present for a claim of conspiracy to commit the tort of conversion. In either scenario, Crim would be entitled to present to the jury evidence of the relationship between VLG and CFS that, according to her, motivated VLG to refuse Crim's request for immediate access to her funds, which in turn caused both pecuniary harm and emotional distress. See *Cenco*, 686 F.2d at 453 (explaining that even "[i]f it was error to withdraw the conspiracy count from the jury, which we doubt, it was harmless error" because "Cenco has pointed us to no evidence that pertained only to Seidman's alleged participation in the conspiracy and not to its alleged participation in the fraud as well")

And while Crim is correct in her assertion that the dismissal of a co-conspirator from a case does not always sink a conspiracy claim (see *Youngquist v. Hunter*, 227 Ill. App. 152, 159 (1st Dist. 1922), it does where (as here) the remaining conspiracy and underlying tort claims seek the same relief for the same party premised on the same underlying factual allegations. If, for example, Crim had settled with VLG, not CFS, then Crim could have proceeded to trial on her conspiracy claim, but not the conversion claim because it would have been dismissed pursuant to any settlement between Crim and CFS. But here, under Crim's theory of the case, the sole remaining conspirator in the case and the underlying tortfeasor are one and the same – namely, VLG.

In sum, for the reasons explained above, the Court concludes that in the circumstances of this case, Illinois law requires dismissal of Plaintiff's civil conspiracy claim as duplicative of her conversion claim. Cf. *Cenco*, 686 F.2d at 453 (observing that the only utility of a separate tort for aiding and abetting in the commission of a tort or civil conspiracy to commit a tort "would be to give plaintiffs' lawyers one more charge to fling at the jury in the hope that if enough charges are made the jury may accept at least one"). [FN1]

> [FN1] Finally, in addressing the point made in the last sentence of Plaintiff's supplemental brief [281, at 3], the Court notes that Mary Robinson has been disclosed as a Rule 702 opinion witness in support of Crim's breach of fiduciary duty claim, not as a fact witness on the alleged conversion (or any other matter at issue in this case) or as an expert on the tort of conversion. Accordingly, as explained above, Robinson (and defense witness George Collins) will be testifying only in the bench trial portion of the case. With that said, to the extent that Crim has a basis in her personal knowledge and understanding to offer admissible fact testimony in support of the notion that the information given to her by VLG was "misleading," she may do so.