FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLIENT FUNDING SOLUTIONS CORP. | |
| Plaintiff, | |
| v. | No. 2010 CV 482 |
| DEBBIE CRIM a/k/a DEBBIE CRIM CLARK, | Judge: Robert M. Dow, Jr. |
| Defendant and Third-Party Plaintiff, | |
| v. | |
| THE VRDOLYAK LAW GROUP, LLC and W&M TRADING CORP. | |
| Third-Party Defendant. | |

<u>VLG MOTION PURSUANT TO FRCP, RULE 50(a) FOR JUDGMENT
AS A MATTER OF LAW AS TO COUNT IV, CONVERSION AND PUNITIVE DAMAGES,
AND COUNT IX, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

VLG, by its attorneys Daniel C. Meenan, Jr. and Joseph R. Lemersal, moves pursuant to FRCP, Rule 50(a) for Judgment as a Matter of Law as to Count IV, Conversion and Count IX, Intentional Infliction of Emotional Distress. In support of its Motion, VLG states:

Federal Rule of Civil Procedure 50(a) provides for judgment as a matter of law, when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party...". The rule "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" Weisgram v. Marley Co., 528 U.S. 440, 448 (2000).

The standard to be employed is essentially the same as the standard for granting

summary judgment. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). Therefore, as with a summary judgment motion, the court must view the evidence in a light most favorable to the non-movant, and should draw all reasonable inferences in favor of the non-moving party, but nonetheless the non-moving party must adduce some competent evidence to support its case, as to each element of its causes of action. Zimmerman v. Chicago Board of Trade, 360 F.3d 612, 623 (7th Cir. 2004). "The question is simply the evidence as a whole, when combined with all reasonable inferences drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the Plaintiff." Hall v. Forest River, Inc., 536 F.3d 615, 619 (7th. Cir. 2008). See also, Whitehead v. Bond, 680 F.3d 919, 925 (7th. Cir. 2012).

Count IV, Conversion

Under Illinois law, in order to recover for Conversion "a plaintiff must prove the following elements: (1) a right to the property; (2) that this right includes the absolute, unconditional right to immediate possession of the property; (3) possession of the property; and (4) that defendant took control or claimed ownership of the property wrongfully and without authorization. (citations omitted)". Edwards v. City of Chicago, 389 Ill.App.3d 350, 905 N.E.2d 897, 900 (1st Dist. 2009). Here, Crim can only meet (perhaps and barely) one of those elements - demanded possession of the settlement funds, on December 27, 2009.

As alleged in her First Amended Complaint, Count IV, the acts relevant to this claim occurred beginning on December 27, 2009 (¶ 119). The evidence at trial reflects the same, giving the plaintiff all benefits of doubt. It is indisputable that until then her money was fully available to her.

Even when the Plaintiff's evidence is considered in a light most favorable to her claims, she has failed to present competent and adequate evidence in support of any of those elements. VLG never challenged Crim's right to any property - the settlement proceeds which she was to receive. The filing of the attachment proceeding by CFS, and the resulting December 29, 2009 Order certainly called into question Crim's right to the funds. Until December 28th, Vrdolyak awaited Crim's directions as to the settlement proceeds. As of and after December 29th, her "right" to the settlement proceeds was in question. Any settlement funds not at issue were returned to her by January 30, 2010. Given all of the facts involved in this dispute, and the plaintiff's evidence in that regard, Crim's "right" to the funds in question has not been established.

Certainly, given the same facts, it cannot be said that Crim's right to all of the funds in question was "absolute, unconditional and immediate." To the contrary, while legitimate disputes were first sorted out in the Circuit Court of Cook County and later in this court, Crim's right to the settlement funds in question was in play and undetermined. Until December 28th the funds were available to her; she directed VLG to hold them. Thereafter, between December 29th and January 30th, her rights were in reasonable doubt, and for reasons having nothing to do with VLG. Crim's evidence fails to meet the second element of her conversion claim as well.

Crim never had possession of the property in question. The evidence reflects that all undisputed funds (aside from what she initially acknowledged owing to CFS) were fully available to her as of December 15th through December 28th, and in fact a check had been drawn in that full amount and payable to her. Crim chose between December 15, 2009

and at the earliest, December 28, 2009, to specifically request that VLG hold all of those funds. The plaintiff never had "possession" of the property. By the time the evidence reflects she asked that the funds be transferred to her, intervening events other than VLG's conduct and beyond its control prevented that from occurring.

Finally, and under no stretch of the imagination has the plaintiff's evidence proved that VLG itself took control or claimed ownership of the property involved, wrongfully and without authorization. It never claimed ownership; it controlled the funds only as a matter of professional responsibility and client direction. Funds were held in the VLG client trust account at Crim's specific direction. Ownership was never a VLG issue. Any control exerted over the funds pre December 28th was Crim directed; any post-December 29, 2009 control was imposed by the Circuit Court of Cook County, not by VLG.

Crim is obliged to prove each of the four elements identified. Even when considered in a light most favorable to her, the evidence fails to establish any of the four elements; it certainly does not support all of them, as required. VLG asks that the court enter judgment in its favor, as a matter of law on Count IV, Conversion.

Certainly, the plaintiff has not presented any evidence with rises to the level of willful or wanton conduct (IPI Instruction 14.01) and has not presented a sustainable claim which would support permitting the jury to consider an award of punitive damages under IPI Instruction 35.01.

Count IX, Intentional Infliction of Emotion Distress

Under Illinois law, to prove intentional infliction of emotional distress a plaintiff must show that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant

either intended to cause or was aware of a high probability that his conduct would cause severe emotional distress; and (3) the defendant's conduct did in fact cause such distress. Breneisen v. Motorola, Inc., 512 F.3d 972, 983 (7th Cir. 2008) (citing Feltmeier v. Feltmeier, 207 Ill.2d 263, 798 N.E.2d 75, 80 (Ill. 2003)).

In Van Stan v. Fancy Colours & Company, 125 F.3d 563 (7th Cir. 1997), the Seventh Circuit summarized the law in Illinois regarding claims for intentional infliction of emotional distress:

> Under Illinois law, which the parties both agree applies, a plaintiff may recover damages for intentional infliction of emotional distress only if he establishes that (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress. Harriston v. Chicago Tribune Co., 992 F.2d 697, 702 (7th Cir. 1993) quoting McGrath v Fahey, 126 Ill.2d 78, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (Ill. 1988)). Conduct is extreme and outrageous only if "the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency . . . ." (Id. at 702-03 quoting Public Fin. Corp. V. Davis, 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (Ill. 1976)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not amount to extreme and outrageous conduct, nor does conduct "characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Public Fin. Corp., 4 Ill.Dec. at 654, 360 N.E.2d at 767. Moreover, we judge whether conduct is extreme and outrageous on an objective standard based on all the facts and circumstances of a particular case. Harriston, 992 F.2d at 703; McGrath, 127 Ill.Dec. at 729, 533 N.E.2d at 811. Thus, to serve as a basis for recovery, the defendant's conduct must be such that the "recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'" Doe v. Calumet City, 161 Ill.2d 374, 204 Ill.Dec. 274, 283, 641 N.E.2d 498, 507 (Ill.1994) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

None of the alleged conduct of VLG as to which Crim has now presented her evidence can be objectively characterized as either "so severe that no reasonable man

5

could be expected to endure it" or "so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community".

Each of the three elements must be proved in order for Crim to prevail. VLG contends that with respect to the first and second elements in particular, there is no question but that Crim has failed to present evidence sufficient to support those claims and that no reasonable jury could come to a different conclusion.

The only evidence on initial referral to CFS is that Crim was given the contact information for a licensed Illinois lender, with which other VLG clients had done business. All loan negotiations were handled directly by Crim. Peter Vrdolyak was involved only as directed under the Crim loan documents, and in a limited capacity to help Crim borrow more money when CFS inquired as to the status of her case. VLG never disclosed confidential information. To the contrary it followed Crim's direction to look into the figures that CFS claimed to have been owed under the loan documents. While it was in midst of attempting to resolve disputes, VLG was terminated as Crim's attorneys.

From December 15, 2009 through December 28, 2009, VLG stood ready, willing and able to distribute Crim's funds to her. Then, events beyond its control intervened, and prevented distribution for approximately thirty days. Until a date well after VLG was terminated as her counsel, and not until she settled her claims against CFS, did Crim ever take any position other than she acknowledged an obligation to CFS for $386,000.00. The fact that by December 29, 2009, VLG was unable to convey her settlement proceeds given the intervening court order, was neither conduct attributable to any act or omission of VLG, nor did it involve any conduct that could be construed as extreme and outrageous.

6

Crim received all of her undisputed proceeds by on or about January 29, 2010, and settled her disputes entirely with CFS by mid-February 2010. Nothing done or not done by VLG at any time between December 15, 2009 and its termination on January 20, 2010 can be objectively considered as having been "extreme and outrageous".

There is no objective evidence whatsoever that VLG intended to cause any distress to its client - for whom it had recovered $2.4 million, and for whom additional damage claims were pending and recoverable prior to its discharge. Moreover, "conduct" assumes some affirmative act, or a blatantly glaring intentional omission. None of that exists in this case given the plaintiff's evidence.

VLG did not engage in any conduct that even remotely could have been intended to or to have had the result of causing severe emotional distress to its client. It was clearly not aware of any "high probabilities" in that regard. VLG deposited funds in accord with Crim's directions and held funds in accord with them. It advanced Crim funds in anticipation of receipt of the settlement proceeds. It held funds to which there were legitimate, conflicting claims, in its trust account. It acted in a manner which it considered to have been required under the attachment order. Crim has failed to present sufficient evidence on the second element of her IIED claim.

Finally, given that VLG deposited or advanced some $45,000.00 to Crim in late 2009, and that it offered to advance additional funds to her thereafter, the nature of the severe emotional distress purportedly suffered by the Plaintiff is unsustainable; no reasonable jury could find otherwise. VLG provided funds for living expenses while liens were resolved, settlement statements were prepared and initial negotiations were

conducted with CFS to resolve its claim. The plaintiff has simply not presented any competent proof as to this third element of her intentional infliction of emotion distress claim. However, even giving her the benefit of the doubt on this element, she has not presented any viable evidence on the first two elements, all of which must be established; the intentional infliction of emotional distress claim fails for that reason. The plaintiff has failed to present any evidence which could permit a reasonable jury to find in her favor on this issue.

No punitive damages have been sought on this claim, and none are available. Accordingly, it should be determined at this point in the trial that no punitive damages are available on either jury count, and that no argument can be made in that regard if matters proceed beyond the resolution of this motion.

Wherefore, Vrdolyak Law Group prays for the entry of judgment in its favor and against Crim, under Federal Rule of Civil Procedure 50(a), in its favor and against the Plaintiff, with respect to all claims asserted in Count IV, Conversion, and in Count IX, Intentional Infliction of Emotional Distress. Also, no punitive damage claim can be presented to the jury, in that there is no basis in the evidence for such damages.

                                      Respectfully submitted,
                                      THE VRDOLYAK LAW GROUP, LLC

                                            S/ Daniel C. Meenan Jr.
                                  By: _____
                                          DANIEL C. MEENAN, JR.

Daniel C. Meenan, Jr.
Joseph R. Lemersal
KRALOVEC MEENAN, LLP
53 W. Jackson Blvd., Suite 1102
Chicago, IL 60604
(312) 788-1111    Attorney No. 1876627